## Combs v. Borough of Ellsworth

*Paul A. Tershel,* for plaintiffs.
*Dale K. Forsythe,* for defendant Bentworth School District.

RODGERS, *S.J.,* August 5, 1991—Plaintiffs, Joseph Combs, Donna Combs, and Casey Combs, a minor, having appealed this court's order of July 8, 1991, sustaining the preliminary objections of defendant, Bentworth School District, in the nature of a demurrer to plaintiffs' amended complaint. This opinion is written in support of the court's order.

This action was initiated by plaintiffs, Joseph and Donna Combs, and their minor son Casey Combs,

against defendants, Bentworth School District, the Borough of Ellsworth and the Commonwealth of Pennsylvania, Department of Transportation, to recover damages for personal injuries sustained by the minor plaintiff, Casey Combs, as a result of an accident that occurred on March 6, 1990, in which the minor plaintiff, while crossing State Highway 917 at its intersection with Walnut Street toward his school bus stop designated by the Bentworth School District, was struck by an automobile being operated by the additional defendant, Rita C. Morrow, in a northerly direction on Route 917 in the Borough of Ellsworth.

Plaintiffs, in their amended complaint, allege that the selection and designation of the land at the intersection of Walnut Street and Route 917 as a school bus stop created a dangerous condition for the minor plaintiff, because the view of the intersection of an approaching motorist, traveling on highway 917, was restricted or blocked by the presence of large two-story buildings on both sides of the intersection, and that such dangerous location of the school bus stop, established by the defendant School District, was a proximate cause of the injuries suffered by the minor plaintiff.

Defendant, Bentworth School District, has renewed its preliminary objections in the nature of a demurrer to the amended complaint on the ground that it is immune from liability, unless otherwise provided by statute, and that the plaintiffs have failed to set forth any facts showing that their cause of action falls within any exception to governmental immunity as set forth in 42 Pa.C.S. §8542.

Preliminarily it should be noted plaintiffs have failed to challenge the propriety of the school district raising the issue of immunity by way of preliminary objections and therefore, this court may prop-

erly rule on the demurrer. *Paz v. Commonwealth, Dept. of Corrections,* 135 Pa. Commw. 162, 580 A.2d 452 (1990).

In the case of *Aetna Electroplating Co. v. Jenkins,* 335 Pa. Super. 283, 484 A.2d 134 (1984), the court said this:

"A preliminary objection in the nature of a demurrer 'admits all relevant facts sufficiently pleaded in the complaint, and all inferences fairly deducible therefrom, but not conclusions of law or unjustified inferences.' *DeSantis v. Swigart,* 296 Pa. Super. 283, 286, 442 A.2d 770, 772 (1982). Preliminary objections can properly be sustained and a complaint dismissed only in cases that are clear and free from doubt. Any doubt must be resolved against the moving party. Only where it appears with certainty that, upon the facts averred, the law will not permit recovery can the complaint be dismissed and summary judgment entered for the defendant. . . ."

Plaintiffs claim that their cause of action falls within the "real estate exception" to governmental immunity which says this:

"(b) *Acts which may impose liability*—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

"(3) *Real property*—The care, custody or control of real property in the possession of the local agency. . . ." 42 Pa.C.S. §8542(b)(3).

Plaintiffs have alleged that defendant school district had the care, custody or control of the land at the intersection of Route 917 and Walnut Street which it negligently designated as a school bus stop, and that as a result of such negligent designation or selection, the minor plaintiff suffered personal injuries.

However, plaintiffs have also alleged that the injuries suffered by plaintiff Casey Combs were caused while he was in the act of crossing Route 917 to go to his bus stop, at the corner of Route 917 and Walnut Street, when he was struck by an automobile being operated in a northerly direction on 917 by the additional defendant, Rita C. Morrow.

Plaintiffs have failed to allege in their complaint as amended, any dangerous condition of the land at the intersection of 917 and Walnut Street designated as a bus stop by the Bentworth School District as a proximate cause of the plaintiff's injuries.

In the case of *Snyder v. Harmon,* 522 Pa. 424, 562 A.2d 307 (1989), the Supreme Court of Pennsylvania held that the Pennsylvania Department of Transportation was not liable for injuries which occurred when plaintiffs fell into a strip mine that adjoined a state highway because the statutory exception to sovereign immunity applied only to Commonwealth real estate itself and the strip mine highwall where the plaintiffs fell was some distance from the department's right-of-way.

In the course of its opinion, the Supreme Court said this:

"The parties have misperceived the duty that is owed by the Commonwealth in this specific situation. In order to ascertain that duty, it is necessary to first examine section 8522(b)(4), the exception to sovereign immunity which appellees contend their claims come within. Because the General Assembly intended to exempt the Commonwealth from immunity only in specific clearly defined situations, we must strictly construe this real property exception. *Love v. City of Philadelphia,* 518 Pa. 370, 543 A.2d 531 (1988); *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987). See also, *Davidow v. Anderson,* 83 Pa. Commw. 86, 476 A.2d 998 (1984).

We also are not free to change the clear meaning of the words to reach a desired result if the statutory language is unambiguous. 1 Pa.C.S. §1921(b). The unambiguous language of section 8522(b)(4) in relevant part provides 'A dangerous condition of Commonwealth agency real estate. . . .' These key words indicate that a dangerous condition must derive, originate from or have as its source the Commonwealth realty.

"It is instructive to turn to the real property exception of the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8542(b)(3) and its accompanying case law for guidance as to the scope of liability imposed for negligent care of real property. As is true for sovereign immunity, exceptions to the rule of governmental immunity are narrowly interpreted, given the express legislative intent to insulate political subdivisions from tort liability. *Mascaro v. Youth Study Center, supra.*

"For the limited waiver of 42 Pa.C.S. §8542(b)(3) to apply, thereby waiving the political subdivision's immunity for negligent care of real property, there must be negligence which makes the real property itself unsafe for activities for which it is used. *Vince by Vince v. Ringgold School District,* 92 Pa. Commw. 598, 499 A.2d 1148 (1985). The government-owned real estate must be able to afford safety not only for the activities for which the property is regularly used but also intended to be used or reasonably foreseen to be used. See *Cestari v. School District of Cheltenham Twp.,* 103 Pa. Commw. 274, 520 A.2d 110 (1987), *alloc. denied,* 517 Pa. 595, 535 A.2d 84 (1987). The focus of the negligent act involving a dangerous condition of government-owned real estate becomes the actual defect(s) of the real estate itself. *Gratkie v. Air Wisconsin Inc.,* 107 Pa. Commw. 461, 528 A.2d 1032

(1987), *alloc. denied,* 518 Pa. 628, 541 A.2d 1139 (1988). Finally, we have found the real estate exception to the rule of immunity under this section can be applied only to those cases where it is alleged that the artificial condition or defect of the land itself causes injury, not merely when it facilitates injury by acts of others, whose acts are outside of the Political Subdivision Tort Claims Act's scope of liability. See *Mascaro v. Youth Study Center, supra.* (Alleged negligent maintenance of detention center permitted violent juvenile offender to escape and commit sexual assault).''

In the case of *Wilson v. Miladin,* 123 Pa. Commw. 405, 553 A.2d 535 (1989), the plaintiff was injured while she waited in the refreshment line and was knocked to the ground by a football player leading his team from the visitors' locker room after half-time. The plaintiff claimed that the placement of the concession stand in close proximity to the locker room constituted a defect in the real property in the care, custody and control of the school district.

In upholding the grant of the summary judgment to the school district, the court said this:

"However, in *Mascaro v. Youth Study Center,* 514 Pa. 351, 363, 523 A.2d 1118, 1124 (1987), our Supreme Court held:

'''[T]he real estate exception can be. applied only to those cases where it is alleged that the artificial condition or defect of the land itself causes the injury, not merely when it facilitates the injury by the acts of others. . . .' (emphasis in original)

"Here, neither the land itself nor any artificial condition created by the locker room's location caused Wilson's injuries; rather, she was injured after her contact with Miladin. At most, it can be said that the placement of the locker room facilitated the injury by Miladin, which our Supreme Court has

said is not actionable under the real estate exception to immunity. *Id.* Therefore, we conclude that the Common Pleas Court did not err in granting Rochester Area's summary judgment motion."

Plaintiffs' reliance on the case of *Bersani v. School District of Philadelphia,* 310 Pa. Super. 1, 456 A.2d 151 (1982), is misplaced. The accident in *Bersani* happened on May 3, 1977, at a time when the governmental immunity statute had not yet been enacted and the school district's immunity was not an issue in the case.

In the case of *Cestari v. School District of Cheltenham Twp.,* 103 Pa. Commw. 274, 520 A.2d 110 (1987), also relied upon by plaintiffs, the plaintiff claimed he was injured at a track meet when he failed to clear the pole and landed with one foot on and one foot off the landing mat. The Commonwealth Court held that proper matting could constitute an essential safety element of the school district's grounds, a situation that could come within the real property exception.

In the case at bar, as pointed out above, plaintiffs have not alleged any facts showing a dangerous condition of the land occupied by the school bus stop itself.

Defendant school district has also argued that plaintiffs have failed to allege any facts showing that it had care, custody or control of real property in the possession of the school district itself.

However, plaintiffs have alleged in their amended complaint, that the defendant school district was possessor of land designated as a school bus stop and, that despite lack of title ownership, defendant exercised control over the land in selecting and

designating the use of the land. It is indeed doubtful that the designation of a school bus stop on a public street creates the possessory interest in real estate in the school district contemplated by the statute, but this court cannot determine this issue as a matter of law at this stage of the pleadings.

It is, however, clear to this court that even assuming that the school district has such a possessory interest in the land designated as a school bus stop, plaintiffs have failed to allege any dangerous condition of that land itself as required by the statute.