620 A.2d 676

**Al STAFFARONI and Emilie Staffaroni, his wife**

v.

**CITY OF SCRANTON, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 17, 1992.

Decided Jan. 29, 1993.

Frank J. Bolock, Jr., City Sol., and A. Leigh Redmon, Asst. City Sol., for appellant.

Joseph D. Paparelli, for appellee.

Before COLINS and PELLEGRINI, JJ., and BLATT, Senior Judge.

COLINS, Judge.

The City of Scranton (the City) petitions for review of an order of the Court of Common Pleas of Lackawanna County (Common Pleas) denying post-trial relief and making final a decree nisi granting Al and Emilie Staffaroni (the Staffaronis) injunctive relief and damages.

This dispute between the Staffaronis and the City began in December of 1987, when the City placed a pipe 15 inches in diameter (the drainage pipe) under Seymour Avenue, which pipe collected runoff water and dispersed the water onto the Staffaronis' property. The Staffaronis objected to the City's Director of Public Works and asked that the pipe be removed. The City refused to remove the pipe.

On June 6, 1988, the Staffaronis filed an equity complaint against the City, alleging that the City had caused damage to

their property by creating a "gully" where the drainage pipe emptied onto their property. The Staffaronis also alleged that the harm to their property would continue until the pipe was removed or blocked.

The City filed an answer and new matter to the complaint. Both parties engaged in discovery and also held several on-site meetings to try to settle the dispute. The parties did not reach a settlement, and the dispute went to trial in Common Pleas before the Honorable S. John Cottone (Judge Cottone) on January 24, 1991. At the trial, oral testimony, photographs and documentary evidence were presented. On January 25, 1991, Judge Cottone issued a decree nisi, ordering that the City block off the pipe and compensate the Staffaronis for the damage done to their property. The City filed post-trial motions and requested a transcript of the trial proceeding on February 1, 1991.

The City failed to secure the transcription of the proceedings for a period of time after filing its post-trial motions, which prompted the Staffaronis to file a motion on April 30, 1991, to dismiss the City's post-trial motions for lack of prosecution. The City obtained a transcript. No further action was taken until November, 1991, when the City filed a brief in support of its post-trial motions. The Staffaronis filed their brief in opposition to the post-trial motions shortly afterward.

On May 1, 1992, Judge Cottone filed an order denying the City's motion for post-trial relief and making final the decree nisi of January 25, 1991. The City appealed to this Court for review of Common Pleas' order.[1] On appeal, the City presents four issues, each of which we will discuss in turn.

---

1. Our scope of review in equity matters is limited to determining whether the trial court committed an error of law or abused its discretion. The equity court's decision will stand where there is sufficient evidence to support the trial court's findings and any reasonable inferences and conclusions drawn therefrom. *Bristol Township v. Lower Bucks County,* 130 Pa.Commonwealth Ct. 240, 567 A.2d 1110 (1989).

## I. IS THERE A COGNIZABLE CLAIM IN EQUITY?

First, the City argues that the Staffaronis failed to prove a cognizable claim in equity. "An injunction will issue only when the rights of the plaintiff are clear, there is an urgent necessity to avoid injury which cannot be compensated for by damages, and greater injury will be done by refusing it than by granting it." *Christoffel v. Shaler Area School District,* 60 Pa.Commonwealth Ct. 17, 19–20, 430 A.2d 726, 728 (1981). Moreover, "equity jurisdiction may not be exercised in order to grant injunctive relief, if an adequate remedy exists at law." *Rodier v. Township of Ridley,* 141 Pa.Commonwealth Ct. 117, 122, 595 A.2d 220, 223 (1991).

The City challenges whether the Staffaronis established the elements necessary for injunctive relief. First, the City argues that the fact that the Staffaronis sought and received damages, negates their claim that they had no adequate remedy at law. We disagree. Our Supreme Court has held that once equity assumes jurisdiction of an action, money damages may be awarded to ensure a just result. *Solomon v. Cedar Acres East, Inc.,* 455 Pa. 496, 317 A.2d 283 (1974). Moreover, our Supreme Court has also held that owners of lands which were subject to flooding as a result of actions by a defendant in draining surface waters onto such lands did not have an adequate remedy at law and were entitled to injunctive relief against the continuing trespass which reoccurred with each rainfall. *St. Andrew's Evangelical Lutheran Church v. Lower Providence Township,* 414 Pa. 40, 198 A.2d 860 (1964).

The City also contends that the relief given (blockage of the drainage pipe) is not suited to abate the wrongful act, because even after the pipe is blocked, the water will continue to flow naturally over the Staffaronis' land. This argument misses the whole point of this litigation. The Staffaronis brought the equity action against the City to ensure that the runoff water *would* flow naturally, in a diffuse manner, over their land, rather than be concentrated by the drainage pipe and confined to a small area of their land, causing erosion of their land in

that small area. The relief granted by Common Pleas was properly suited to achieve the relief sought by the Staffaronis.

## II. IS THE CITY IMMUNE FROM SUIT?

■ Second, the City argues that it is immune from suit under what is commonly known as the Political Subdivision Tort Claims Act (the Act), 42 Pa.C.S. §§ 8541–8542. We disagree, because the Staffaronis' claim falls within the real estate exception to immunity found in the Act, at 42 Pa.C.S. § 8542(b)(3).

In order for a claim to come within an exception to the Act's general grant of immunity to political subdivisions, 42 Pa.C.S. § 8541, a litigant must satisfy both parts of a two-part test.

First, under Section 8542(a) of the Act, a litigant must establish both that his injury was caused by a negligent act of the agency done within the scope of its duties and that his claim would be recoverable at common law or by statute if it were caused by one who is not cloaked with governmental immunity. The Staffaronis' claim meets both conditions. The City's placement of the drainage pipe negligently caused the damage to the Staffaronis' property. The pipe was intended to alleviate a continuing problem of excessive ice formation on the roadway at Seymour Avenue. The damage done to the Staffaronis' property was a foreseeable consequence of the City's action. Moreover, the Staffaronis' claim against the City would be recoverable at common law against a non-immune defendant. In *Leiper v. Heywood–Hall Construction Company*, 381 Pa. 317, 113 A.2d 148 (1955), our Supreme Court held that a landowner may not alter the natural flow of surface water on his property by concentrating it in an artificial channel and discharging it upon the lower land of his neighbor, even though no more water is collected than would naturally have flowed upon the neighbor's land in a defused condition.

■ Second, under Section 8542(b) of the Act, a litigant must establish that his claim falls within one of the eight exceptions delineated in the Act. The Staffaronis' claim falls

within the real estate exception of Section 8542(b)(3), which states that a local agency can be held liable for injury caused by the care, custody, or control of real property in the possession of the local agency.[2] The real estate exception to governmental immunity provides remedy for injuries caused by artificial conditions or defects of the land itself. *City of Philadelphia v. Buck,* 138 Pa.Commonwealth Ct. 250, 587 A.2d 875, *petition for allowance of appeal denied,* 528 Pa. 618, 596 A.2d 801 (1991). The drainage pipe is an artificial condition of the City's real estate, which places Staffaronis' claim within the exception of Section 8542(b)(3). Accordingly, the City may not assert governmental immunity and may be held liable for the Staffaronis' claims.

### III. DID COMMON PLEAS ERR IN PERMITTING THE TESTIMONY OF R.J. SMITH?

The City alleges that Common Pleas erred in permitting the testimony of R.J. Smith (Mr. Smith), who offered an estimate of the damage to the Staffaronis' property. The City argues that this testimony attempted to establish a causal connection between the damage to the Staffaronis' property and the City's placement of the drainage pipe under Seymour Avenue and that Common Pleas erroneously relied on this testimony in finding that the City caused the damage to the Staffaronis' property.

The City's argument is a specious one. Mr. Smith did not testify as to any causal connection between his estimate of the damage to the Staffaronis' land and the City's installation of the drainage pipe. Mr. Smith only testified regarding his estimate of the cost of repairing the damage to the Staffaronis' land. Mr. Smith did not offer an opinion regarding the cause

2. The City argues that the only possible exception to immunity relevant to this case is the exception of Section 8542(b)(6) of the Act, pertaining to the maintenance of streets. We disagree. The injury alleged in the case is caused by the drainage pipe, which is an artificial condition of the City's real estate, not an artificial condition of the street. Therefore, the Staffaronis' claim, if otherwise actionable, would fall within the real estate exception of Section 8542(b)(3) of the Act.

of the damage; neither did he testify about the condition of the land before the alleged damage.

The City further contends that Common Pleas should not have admitted Mr. Smith's testimony, because he had no knowledge of the condition of the property before the City installed the pipe and because he had no knowledge of whether the damage to the Staffaronis' land was caused by the City's drainage pipe.

The City's argument must fail for two reasons. First, the City did not make these objections to Mr. Smith's testimony at trial and, thus, they are waived. Second, Mr. Smith's testimony was relevant to the issue of damages suffered by the Staffaronis and was, therefore, properly admitted by Common Pleas.

## IV. WAS COMMON PLEAS' ORDER AGAINST THE WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW?

The City asserts that Common Pleas erred in not considering the City's proposed findings of fact and conclusions of law; therefore, according to the City, Common Pleas' decision is both against the weight of the evidence and contrary to law.

The City's proposed findings of fact and conclusions of law are based on the testimony of their witness, Mr. Luciani, the City Engineer. Judge Cottone, in rendering his decision, found the witnesses presented by the Staffaronis to be more credible and convincing than Mr. Luciani. It is well established that the trial judge, sitting without a jury, has the discretion to determine the credibility of the witnesses and to weigh their testimony. *Allegheny County v. Monzo*, 509 Pa. 26, 500 A.2d 1096 (1985). Therefore, we conclude that Judge Cottone acted within his discretion as the trial judge, and his decision was not contrary to law.

Accordingly, based on the foregoing discussion, the order of the Court of Common Pleas is affirmed.

## ORDER

AND NOW, this 29th day of January, 1993, the order of the Court of Common Pleas of Lackawanna County in the above-captioned matter is affirmed.